UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLINT BRYANT, et al.,

        Plaintiffs,

v.

        Case No. 19-cv-0050-bhl

BMW OF NORTH AMERICA LLC,

        Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

        Plaintiffs Benjamin Schaefer and Clint Bryant filed this lawsuit accusing Defendant BMW of North America LLC (BMW) of failing to keep its word. More specifically, Plaintiffs complain that BMW issued them limited written warranties but never made good on the corresponding promises. Based on these alleged failures, Schaefer and Bryant assert breach of express warranty claims under Wis. Stat. §402.313 and the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §2301. After years of fact and expert discovery and sometimes contentious motion practice, the parties have now filed cross motions for summary judgment in which they debate standing, whether the relevant statutes of limitation have expired, and evidence of causality. Because the summary judgment record shows Schaefer is not the real party in interest for claims related to "his" car, BMW's motion will be granted as to those claims. With respect to Bryant's claims, however, questions of fact make summary judgment inappropriate, and the Court will set that portion of the case for trial.

## FACTUAL BACKGROUND[1]

        Plaintiff Benjamin Schaefer is the 100% owner of Steamer Motor Company, a used car dealership incorporated under Wisconsin law. (ECF No. 116 at 1.) On or about March 15, 2010, Steamer purchased a new 2009 BMW 705li (the Steamer BMW) from International Autos, an authorized BMW dealer. (*Id.*)

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses). (ECF Nos. 85, 86, 91, 112, 116, & 122.) Disputed facts are viewed in the light most favorable to the non-moving party.

On or about October 17, 2013, Plaintiff Clint Bryant purchased a certified pre-owned 2011 BMW 5 Series 550i (the Bryant BMW) from Perillo BMW, an authorized BMW dealer. (*Id.* at 2.)

Both the Steamer BMW and the Bryant BMW were equipped with an N63 engine. (ECF No. 86 at 2.) According to the plaintiffs, in or around 2010, BMW began receiving complaints regarding the N63's excessive oil consumption. (ECF No. 112 at 10-11.) In some instances, the problem occurred due to defective valve stem seals. (*Id.* at 12.) Both plaintiffs contend that the N63 engines in their BMWs suffered from this defect. (*Id.* at 4-8.)

Both the Steamer and Bryant BMWs were sold subject to the manufacturer's New Vehicle Limited Warranty (NVLW), effective for 4 years or 50,000 miles, whichever came first. (ECF No. 116 at 3-4.) The NVLW states, in relevant part:

> BMW of North America, LLC (BMW NA) warrants during the Warranty Period the 2011 U.S.-specification BMW vehicles distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser.

(*Id.* at 4.)

Bryant also received coverage under BMW's Certified Pre-Owned Warranty (CPOW), which expired on August 11, 2016 or when the vehicle's odometer reached 100,000 miles, whichever came first. (ECF No. 112 at 3.) The CPOW stated, in relevant part:

> The Certified Pre-Owned Protection Plan provides specific coverage against defects in material and workmanship; the plan is not a Maintenance Program or an extension of the original 4-year/50,000-mile New Vehicle Limited Warranty for Passenger Cars and Light Trucks (Valid in U.S.A. including Puerto Rico).

(ECF No. 116 at 4.)

In 2012, Schaefer attempted to service the Steamer BMW under the NVLW at a BMW center. (*Id.* at 17.) Notwithstanding this effort, according to Plaintiffs' expert, Darren Manzari, the valve stem seal defect was never corrected. (ECF No. 112 at 9.) Bryant attempted to service the Bryant BMW under the NVLW and/or CPOW in 2014. (*Id.* at 3.) But again, according to Manzari, the valve stem seal defect was never corrected. (*Id.* at 5.)

Around June 8, 2016, Bryant serviced his vehicle under the CPOW because it was smoking from the exhaust and consuming excessive oil. (ECF No. 116 at 2-3.) To address Bryant's complaints, the dealer replaced the valve guide stem seals, oil sump gasket in the upper pan, turbo

charger, oil line feed and return lines, and the turbo cooler pump. (*Id.* at 3.) The dealer then test drove the vehicle and found it no longer smoked. (ECF No. 91-4 at 9.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Plaintiffs bring two claims for breach of express warranty against BMW, one pursuant to Wis. Stat. §402.313, and the other under the MMWA, 15 U.S.C. §2301, et seq. BMW argues that Plaintiffs lack standing, Plaintiffs cannot show breach, and the contracts at issue did not contain express warranties within the meaning of the Wisconsin Uniform Commercial Code (UCC). Because the record shows Schaefer is not the proper party to bring his claims, BMW's summary judgment motion will be granted as to those claims. Questions of fact persist, however, with respect to Bryant, so neither he nor BMW is entitled to summary judgment as to his claims.

**I. Plaintiff Schaefer's Claims Fail Because He Is Not The Real Party In Interest With Respect To The Steamer BMW Warranty.**

BMW challenges Schaefer's ability even to pursue his warranty and MMWA claims. (ECF No. 90 at 15.) Under Federal Rule of Civil Procedure 17(a) "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "Normally, a natural person is not the real party in interest for bringing a suit based on a corporation's rights, even when the person is the sole owner of the corporation." *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006)); *see also Marshfield Clinic v. Doege*, 269 Wis. 519, 526 (1955) ("Rights of action accruing to a corporation belong to the corporation, and an action at law or in equity, cannot be maintained by the members as individuals.") (internal citations omitted). This concept is often considered part of the "prudential" branch of standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126

(2014) (noting "'the general prohibition on a litigant's raising another person's legal rights'") (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). Based upon the Supreme Court's holding in *Lexmark*, the Seventh Circuit determined that "whether a shareholder has the ability to assert a corporation's rights is a matter determined under the substance of corporate and agency law rather than federal jurisdiction." *Knopick*, 895 F.3d at 529. Accordingly, courts should look to state law and the relevant statutes at issue to determine whether a shareholder is a real party in interest.

The statutes relevant to Schaefer's claim are the MMWA and the Wisconsin UCC. Congress enacted the MMWA "to create a federal private cause of action for *consumers* injured by the violation of" warranties as regulated under the Act. *Skelton v. General Motors Corp.*, 660 F.2d 311, 320 (7th Cir. 1981) (emphasis added). According to the Act, a "consumer" is:

> a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. §2301(3). The Wisconsin UCC creates a state private cause of action for breach of express warranties. *See* Wis. Stat. §402.313. An express warranty is created when a seller makes an affirmation of fact or promise to the buyer and that fact or promise relates to the goods and becomes the basis of the bargain. *Id.* "Buyer" here means "a person who buys or contracts to buy goods." Wis. Stat. §402.103(1)(a).

As defined by the relevant statutes, the terms "consumer" and "buyer" plainly exclude Schaefer. Steamer Motor Company, Schaefer's auto dealership, was the purchaser of the allegedly defective vehicle, not Schaefer. (ECF No. 18 at 3-4). Steamer Motor Company's name is on the title, (ECF No. 91-2 at 5), the vehicle had dealer plates, (ECF No. 87-3 at 21: 20-23), and the sales transaction between BMW and Steamer involved no sales tax because a dealer does not "pay tax on that car until it [is] sold." (*Id.* at 21:17-18.) When the car was serviced, the company name (rather than just the name of Mr. or Mrs. Schaefer) was printed under the "Customer" header. (*Compare* ECF No. 94-6 at 2, *with* ECF No. 91-4 at 4.) Schaefer also described the car as his wife's "demo." (ECF No. 87-3 at 17:11.) To this day, there is no record of Steamer Motor Company ever transferring the vehicle to Schaefer in his personal capacity.

And even if Steamer did transfer ownership to him in his personal capacity, Schaefer would still lack standing to bring this suit. He avoided paying sales tax on the initial transaction because of a privilege extended to dealerships, postponing sales tax until the dealership sells the vehicle in question. (ECF No. 90 at 16.) In other words, he evaded sales tax because he purchased the car "for purposes of resale." This fact also excludes him from being a "consumer" under the plain terms of the MMWA.

Although his name does not appear on the title, Schaefer argues that he should be treated as the vehicle's true owner because he is the sole owner of Steamer Motor Company, signed the contract on Steamer's behalf, paid for the vehicle with his own money, never made any business expense write-offs in connection with his use of the vehicle, used it as his personal vehicle, and attended to its service and maintenance needs. (ECF No. 115 at 3.) This self-serving attempt to disregard corporate form is unavailing. Having incorporated a separate entity and then purchased property within the corporate form, Schaefer is not free to abandon corporate formality whenever it is convenient. *See Jonas v. State*, 121 N.W.2d 235, 239 (Wis. 1963) ("[T]hose who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so."). Moreover, nothing in the MMWA or the Wisconsin UCC suggests abrogating the general prohibition against third party standing based on the collection of factors Schaefer posits. This case, as with any case, must be brought in the name of the real party in interest. Here, that means the "consumer" and the "buyer." Because Schaefer does not qualify as either, he is not the real party in interest, and his claims cannot stand. For this reason, BMW's summary judgment motion is granted, and Schaefer's is denied.

### II. Plaintiff Bryant's Claims Cannot Be Resolved On Summary Judgment.

There is no argument that Bryant is the proper party-in-interest to assert his warranty claims; he undisputedly holds title to the allegedly defective vehicle and can enforce any warranty on that car. BMW nevertheless raises both procedural and substantive challenges to his claims. BMW first argues that the Court lacks jurisdiction to adjudicate Bryant's claims and any warranty claims are time barred. On the merits, BMW further argues that the limited written warranty that accompanied Bryant's purchase of his BMW is not an actionable "express written warranty" and, even if it is, there was no breach. For his part, Bryant argues the undisputed facts establish a breach as a matter of law. The record does not support BMW's procedural challenges. But it also does

not confirm, as undisputed fact, that a breach of warranty occurred. Accordingly, neither BMW nor Bryant is entitled to summary judgment.

### A. BMW's Procedural Challenges To Bryant's Claims Fail.

#### 1. Post-Filing Factual Changes Do Not Deprive This Court Of Subject-Matter Jurisdiction.

BMW suggests that Schaefer and Bryant "who allege $35,130.64 in combined 'best case scenario' damages, are $14,869.36 short of the $50,000 threshold for jurisdiction under 2310(d)(1)(B) of the [MMWA]." (ECF No. 90 at 17.) It is true that, in aggregate, Schaefer and Bryant seek damages totaling no more than $35,130.64. (*Id.* at 18.) But a case's amount in controversy is not measured post-filing or at the defendant's convenience. "[J]urisdiction depends on the state of affairs *when the case begins*; what happens later is irrelevant." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (emphasis added). In *Gardynski-Leschuck*, the plaintiff improperly attempted to satisfy the MMWA's amount-in-controversy by relying on damages plus anticipated legal expenses. *Id.* at 959. The Court held that just as "post-filing events that increase defendant's outlay cannot create jurisdiction that was lacking at the outset," the "[r]ecovery of less than $50,000 would not retroactively deprive the district court of jurisdiction." *Id.* at 958.

BMW's argument fails because, when this case began, it also featured Plaintiff Maurice Hill. (ECF No. 18 at 4.) He, like Plaintiffs Schaefer and Bryant, sought, among other relief, to have his engine replaced, (ECF No. 18 at 25), which Plaintiffs' expert Darren Manzari concluded would cost between $12,500 and $15,000. (ECF No. 90 at 18.) Assuming $15,000 for the engine replacement, the total damages sought by all plaintiffs at the beginning of the case would be $50,130.64, more than that required for federal jurisdiction under the MMWA. It does not matter that Hill later filed a stipulation of dismissal. (ECF No. 82.) When the case began, Plaintiffs met the amount-in-controversy necessary to invoke MMWA federal jurisdiction, and that jurisdiction does not divest now that only two of three Plaintiffs remain.

### 2. The NVLW And CPOW Are Future-Performance Warranties, So There Is No Statute Of Limitations Bar To Bryant's Claims.

The Wisconsin UCC states that an "action for breach of any contract for sale must be commenced within 6 years after the cause of action has accrued." Wis. Stat. §402.725. "Thus, the normal rule is that a breach-of-warranty action must be commenced within six years after 'tender of delivery' of the product warranted." *Midland Builders, Inc. v. Semling-Menke Co.*, 287 Wis.2d 132 (Ct. App. 2005). "However, if the warranty 'explicitly extends to future performance of the goods,' the action accrues when the buyer discovered or should have discovered the breach." *Id.* "[F]or such a warranty to exist, 'there must be specific reference to a future time in the warranty.'" *Selzer v. Brunsell Bros., Ltd.*, 257 Wis.2d 809, 813 (Ct. App. 2002) (quoting *Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978)). "The requirement of a 'specific reference to a future time' is satisfied when a warranty guarantees a product for a particular number of years, or for a less precise, but still determinable period of time." *Id.* (internal citations omitted). The same six-year time bar applies to MMWA claims. *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-35 (1995) (holding that, when a federal statute fails to provide a statute of limitations, the court should borrow one from an analogous state law claim).

Bryant filed his claims on January 8, 2019. (ECF No. 1.) BMW tendered delivery to the original purchaser of Bryant's vehicle on August 11, 2010. (ECF No. 90 at 23.) Bryant himself took possession of the vehicle on October 17, 2013. (*Id.*) Therefore, assuming no tolling doctrine applies, whether Bryant filed within the applicable six-year window depends upon whether his cause of action accrued at the time of the original sale or when he purchased the vehicle.

Although Wisconsin courts have never conclusively determined whether repair and replace warranties extend to future performance, BMW asks the Court to adopt the reasoning of *Cosman v. Ford Motor Co.*, 285 Ill. App. 3d 250, 257 (Ill. Ct. App. 1996), where the Illinois court of appeals concluded that a repair and replace warranty did not extend to future performance because the warranty did not contemplate the future performance of the goods, but rather the seller in promising to replace those goods. *See also Carroll v. BMW of N. Am., LLC*, No. 1:19-cv-000224-JMS-TAB, 2021 WL 3474032, at *18 (S.D. Ind. August 6, 2021) (noting Indiana Supreme Court's requirement that a future-performance warranty extend to the future performance of the goods, *not the seller*). Needless to say, neither of these decisions is a binding interpretation of Wisconsin law, and the Court will not rely upon them.

The entire purpose of Wis. Stat. §402.313 is to provide a private right of action for buyers aggrieved by a warrantor's failure to satisfy the warranty. Using that principle as lodestar, the Court cannot apply *Cosman*'s logic. The NVLW made specific reference to a future time—four years or 50,000 miles—as did the CPOW—August 11, 2016 or 100,000 miles. That BMW was warranting its own future performance as opposed to the future performance of the vehicle itself is a red herring. *See R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (holding that the promise to repair or replace *limits the remedy* available to the consumer in the event of breach; it does not determine the nature of the warranty in question). In either case, the warranty explicitly extended to future performance. If the Court were to accept BMW's position, "the protection afforded the buyer during the latter part of a warranty . . . would be largely illusory . . . [and] the longer-term protection afforded by a warranty extending beyond [six] years would be completely illusory." *Nationwide Ins. Co. v. General Motors Corp./Chevrolet Motor Div.*, 533 Pa. 423, 434 (1993). In other words, BMW's reading of the UCC would deprive consumers of the ability to effectuate a forward-looking repair or replace warranty more than six years after original tender of delivery, even though the warranty itself extends the promise to repair or replace into the future and possibly beyond that six-year period. This is wholly inconsistent with the purpose of §402.313. As a result, the Court holds that both the NVLW and CPOW extended to future performance per Wis. Stat. §402.725(2). Accordingly, the causes of action associated with breach of those warranties accrued when Bryant discovered or should have discovered the breach. Regardless of when that may have been, it occurred within the six-year statute of limitations because Bryant took possession of his vehicle in late 2013 and filed this lawsuit in early 2019. Therefore, there is no statute of limitations bar to Bryant's claims.

### B. The NVLW and CPOW Are Express Warranties, Not Service Contracts, Under The MMWA.

BMW argues that the NVLW and CPOW were *de facto* "service contracts" under the plain meaning of the MMWA. (ECF No. 90 at 30.) It cites to *Evitts v. DaimlerChrysler Motors Corp.* for the proposition that a plaintiff cannot sue for breach of warranty based upon a service contract. 359 Ill. App. 3d 504, 512 (Ill. Ct. App. 2005) ("Illinois courts have held that agreements that do not affirm the quality or workmanship of an automobile or warrant against any defects, but rather offer to repair certain defects not otherwise covered by a warranty and that may occur within a

certain time period or certain number of miles, are to be construed as service contracts rather than warranties and that alleged breaches thereof are not actionable as breach of warranty claims.").

Wisconsin Statute §402.313, which governs the creation of an express warranty, states, in part, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Nothing in this section exempts promises to repair and replace defective parts from the definition of express warranty. This makes sense because the promise to repair and replace does not change the character of the warranty but rather the remedy available to the consumer. *See R.W. Murray Co.*, 697 F.2d at 823. As other courts have noted "most motor vehicle warranties" limit the buyer's remedy to repair or replacement. *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 419 (1978). If the Wisconsin legislature had intended to make the most common type of motor vehicle warranty unactionable under the state's UCC, surely it would have said so explicitly. *Cf. Whitman v. Am. Trucking Ass'ns.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not . . . hide elephants in mouseholes.").

In this case, BMW promised to repair or replace defective goods, and Bryant alleged that he relied on that promise in deciding to purchase his vehicle. Under Wisconsin law, that is sufficient to create an express warranty.

### C. Whether BMW Breached Its Express Warranties Is A Disputed Question Of Fact Not Properly Resolved At Summary Judgment.

Both parties claim they are entitled to summary judgment on the question of breach. BMW argues that it never failed to repair or replace any part of Bryant's vehicle, so it cannot be liable. (ECF No. 90 at 29.) Conversely, Bryant argues that BMW never remedied the defects he identified in his vehicle. (ECF No. 84 at 16.) Because this dispute ultimately results in a battle of the experts, summary judgment is an inappropriate venue for resolution.

After reviewing photographs and videos, Plaintiffs' expert Darren Manzari concluded that Bryant's vehicle suffers or suffered from defective valve stem seals that BMW did not remedy in a reasonable period of time. (*Id.*) Reviewing the same evidence, Defendant's expert Rick Veren offered a slew of alternative explanations for the problems with Bryant's vehicle, including poor user maintenance. (ECF No. 111 at 20.) Where rival experts meet in the ring, the jury, not the Court, scores the fight. *See Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) ("[I]n a case of dueling experts . . . it is left to the trier of fact . . . to decide how to weigh the competing expert

testimony."). Because both experts are qualified and employed reliable methods in reaching their conclusions, neither side can claim entitlement to the truth as a matter of law. Therefore, whether BMW breached its warranties with respect to Bryant is a question of fact for a jury to decide.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment under Fed. R. Civ. P. 56 (ECF No. 83) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment under Fed. R. Civ. P. 56 (ECF No. 89) is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to all claims of Plaintiff Schaefer. The motion is denied with respect to all claims of Plaintiff Bryant.

Dated at Milwaukee, Wisconsin on February 11, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge