UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLINT BRYANT, et al.,

          Plaintiffs,

v.

          Case No. 19-cv-0050-bhl

BMW OF NORTH AMERICA LLC,

          Defendant.

## ORDER ON MOTIONS TO STRIKE

Alongside a motion for summary judgment, (ECF No. 89), Defendant BMW of North America LLC filed a motion to strike the supplemental opinions of Plaintiffs' expert Darren Manzari, (ECF No. 88), as well as a motion to exclude his opinions and testimony entirely. (ECF No. 92.) Plaintiffs disclosed Manzari's supplemented report after the close of all discovery and without any effort to obtain Court approval, so the Court will grant BMW's motion to strike that report. There is no basis, however, for excluding Manzari's opinions and testimony in their entirety, so BMW's motion to exclude will be denied.

### ANALYSIS

**I.    Manzari's Supplemented Report Was Improperly Filed and Will Be Stricken.**

On June 23, 2021, BMW timely produced an expert report prepared by Technical Service Engineer Richard Veren. (ECF No. 100 at 2.) Plaintiffs deposed Veren on August 5, 2021. (*Id.*) At this deposition, Plaintiffs claim Veren revealed new facts that had not been previously disclosed and went to the heart of their claims. (*Id.*) Accordingly, on August 6, 2021, Plaintiffs served BMW with amended Rule 26(a)(1)(A) disclosures in which they listed Veren as an individual likely to have discoverable information that Plaintiffs might use to support their claims or defenses. (*Id.*) Plaintiffs also ordered deposition transcripts to forward to their expert Darren Manzari. (*Id.*) Manzari reviewed the transcripts and issued a supplemented expert report based on his review on September 1, 2021. (*Id.* at 2-3; ECF No. 78-1.)

All discovery officially closed on August 12, 2021. (ECF No. 77.) Accordingly, BMW moves to strike Manzari's supplemented report because it was filed well after the deadline. (ECF No. 88.) Plaintiffs argue that, pursuant to Federal Rule of Civil Procedure 26(e), Manzari's supplemented report was timely filed. (ECF No. 100 at 3-4.) Rule 26(e) states:

> (1) *In General*. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>> (B) as ordered by the court.
>
> (2) *Expert Witness*. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

*Id.*

But Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Welch v. Eli Lilly & Co.*, 2009 WL 700199, at *4 (S.D. Ind. Mar. 16, 2009) (quoting *Allgood v. Gen. Motors Corp.*, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007)). And this case provides especially good reasons to deny Rule 26(e) supplementation. The Court conducted a status conference with the parties on September 24, 2021. (ECF No. 80.) At that conference, BMW requested leave to reinspect the subject vehicles because of new opinions contained in Plaintiffs' supplemented expert report. (*Id.*) Because discovery had closed, the Court gave Plaintiffs a choice: allow reinspection in exchange for the guaranteed survival of Manzari's supplemented report, or deny reinspection and risk that BMW would file a motion to strike the report. (*Id.*) Plaintiffs' counsel elected not to allow reinspection and instead to strictly enforce the discovery deadline. (*Id.*) Today, the Court embraces Plaintiffs' inflexible position. Manzari's supplemented report will be stricken because it was filed long after the close of all discovery.

Plaintiffs protest that because Veren revealed new information in his deposition—just seven days before the close of all discovery—equity demands admitting Manzari's second report. Not so. If Plaintiffs wanted to extend discovery, they should have filed a motion. It was not their

prerogative to unilaterally extend discovery for their own expert and then deny BMW the same courtesy based on a strict reading of procedural deadlines.

## II. Manzari's Testimony Is Both Relevant and Reliable, so the Court Will Not Exclude It.

In addition to striking the supplemented report, BMW seeks to exclude Manzari's entire testimony as irrelevant and unreliable pursuant to Federal Rule of Evidence 702. (ECF No. 92 at 1-4.) But while BMW cites to five of Manzari's conclusions in support of its motion, its arguments essentially boil down to (1) quibbles over those conclusions rather than the methodology involved in reaching them; and/or (2) unpersuasive arguments about Manzari's qualifications. Because the Court determines reliability according to the method employed rather than the conclusions reached, and because Manzari is qualified to render each of the cited opinions, these arguments fail to make a case for excluding his testimony.

The Seventh Circuit follows a three-step analysis to determine whether expert testimony is both relevant and reliable: (1) "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education[]'. . . ; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable . . . ; and (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)). "It is not the trial court's role to decide whether an expert's opinion is correct." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). "The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 159 (1999)).

Manzari's qualifications are not disputed. He has worked in the auto industry for 35 years. (ECF No. 109 at 1.) He has an Associate of Applied Science degree in Automotive Engineering, and he has held a certification from the National Institute of Automotive Service Excellence as a Certified Master Automotive Technician for over 25 years. (*Id.*) He owned and operated three automotive diagnostic and repair facilities for over 15 years. (*Id.* at 1-2.) He operates a training and consulting business through which he provides technical training to and consults with colleges, Original Equipment Manufacturer (OEM) dealerships, and aftermarket facilities. (*Id.* at 2.) His business has done work in about a dozen countries for at least 23 OEM dealers representing at least 24 manufacturers, including BMW. (*Id.*) He holds the following certifications: Automotive

Service Excellence (ASE) L1 Automotive Advanced Engine Performance, ASE A9 Light Vehicle Diesel Engines, and ASE L3 Light Duty Hybrid/Electric Vehicle. (*Id.*) And he has experience working with the BMW N63 engines that are the subject of this suit. (*Id.*) In short, Manzari is properly qualified to testify on the matters in issue in this case. *See* Fed. R. Evid. 702.

But BMW contends that Manzari's testimony should be excluded, notwithstanding his qualifications. (ECF Nos. 92, 97.) BMW first attacks Manzari's opinion that the valve stem seals in Plaintiffs' vehicles were defective and consumed excessive oil. (ECF No. 97-1 at 18-19.) It argues that Manzari mischaracterized Service Information Bulletin (SIB) B11 08 15. (*Id.*) According to BMW, Manzari testified that this SIB could be used "as proof that [defective valve stem seals] can be established simply by the presence of any of three symptoms—(1) smoke from the tailpipe when starting or aggressively accelerating and decelerating the engine; (2) excessive engine oil consumption; or (3) spark plugs fouled with engine oil." (*Id.* at 18.) In reality, SIB B11 08 15 says that one can only conclude that the valve stem seals are defective when one of the three symptoms is present *and* other potential causes have been exhausted. (*Id.*) This is not inconsistent with Manzari's method. He never stated that defective valve stem seals existed simply due to the presence of one of the three symptoms. Rather, he based his conclusion on service records, videos, a Consumer Report study, BMW's own internal reports, and his own experience working with automobiles and the N63 engine. (ECF No. 109 at 4-11.) BMW's complaint is primarily that it dislikes and disagrees with Manzari's ultimate conclusion. Such disagreement is hardly surprising, but it does nothing to show the methodology Manzari employed to reach his conclusion was unreliable.

BMW next argues that Manzari's opinion that the valve stem seals were defective at point of sale is unreliable because Manzari lacks automotive design experience, and the evidence he relied on was grossly insufficient to conclude valve stem seal defects existed at point of sale. (ECF No. 97-1 at 15-18.) The first argument was already rejected by the Southern District of Indiana in the related case *Carroll v. BMW of North America, LLC*. There, the Court held that "BMW's argument that Mr. Manzari is not an expert in automotive design misses the point, given that his vast experience qualifies him to opine regarding the functioning of the vehicle's engine." (19-0224-JMS-MG ECF No. 151 at 29.) As to the second argument, Manzari explained that he was able to conclude that the valve stem seals were defective at point of sale because those seals are meant to last the lifetime of the engine, so if they do not, they are ipso facto defective when

tendered to the consumer. (ECF No. 109 at 20-23.) To reach this conclusion, Manzari relied upon the presence of symptoms of defects, photos, videos, and his own extensive knowledge. (*Id.*) Once again, there is nothing unreliable about this conclusion; it is simply a conclusion that BMW disagrees with.

BMW proceeds to argue that Manzari's opinion that BMW concealed the valve stem seal defect is improper *ipse dixit* and an improper conclusion of law. (ECF No. 97-1 at 5-9.) BMW is correct that expert opinions cannot be *ipse dixit*. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). But Manzari's opinion is not. His technical and specialized knowledge may help the jury determine a fact in issue—whether BMW's internal records show that it knew of and concealed the N63 engine's valve stem seal defects. BMW's internal records contain technical jargon difficult for the layperson to parse. Manzari's testimony can assist in this respect. Further, BMW has suggested its alleged delay in repairing the defects is attributable to the need to create a new repair tool. Manzari disputes that this was necessary. The average juror is unlikely to possess the skill or knowledge necessary to adjudicate this dispute without expert testimony. The parties also dispute whether BMW dealers engaged in "concealment" when they informed consumers that their engine's oil consumption was "normal" (Manzari suggests that the level of consumption BMW calls "normal" could never properly be considered as such). Again, Manzari's testimony could help clarify an issue on which a layperson lacks specialized knowledge. And, as a series of courts in related cases have noted, this opinion is not an improper conclusion of law because it does not reach the ultimate legal question. *See Harris et al v. BMW of N. Am., LLC et al*, 2020 WL 7318087, at *4 (E.D. Tex. Dec. 11, 2020) ("Manzari offers his expert opinion—reached after considering documents and applying the information contained in the documents to his knowledge and experience—on a hotly contested fact that the jury will ultimately have to determine."); *see also Baker v. BMW of N. Am., LLC*, 2021 WL 1577837, at *5 (E.D. La. Apr. 22, 2021); *Mize et al v. BMW of NA, LLC*, 19-cv-7-Z-BR, ECF No. 122, at 14 (N.D. Tex. Oct. 1, 2021). The elements of fraudulent concealment are (1) failure to disclose a material fact; (2) intent to defraud; and (3) reliance upon the failure to disclose resulting in damage. *Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1030 (E.D. Wis. 1998). Opining that concealment occurred does not settle this legal issue. Therefore, Manzari's opinion is both relevant and reliable.

BMW next argues that (1) Manzari is not qualified to opine that the subject vehicles were unfit for their ordinary purposes; and (2) this opinion is unreliable because, although Manzari states

that excessive oil consumption endangers a car's engine, he has not identified an instance in this case where engine failure occurred. (ECF No. 97-1 at 19-20.) The Court has already settled the qualification issue. Manzari's experience qualifies him to testify on the functioning of the vehicles' engines. As for the reliability of his method, Manzari relied on photos and videos of the vehicles, the owner's manuals and service and warranty information, and his own automotive experience. (ECF No. 109 at 23-24.) He used these sources to conclude that, while no Plaintiff claims engine failure, their vehicle engines could have failed had they not independently decided to refill the oil between oil changes, a process not contemplated by the manuals or warranty information. (*Id.*) This opinion is hardly unreliable, even if BMW, as with Manzari's other conclusions, disagrees with it.

Last, BMW contends that Manzari lacks sufficient facts to conclude that the remedy for defective valve stem seals is a replacement engine at the cost of $12,000-$15,000. (ECF No. 97-1 at 21-22.) Manzari relied on BMW's internal documents, estimates from BMW dealerships, and his own automotive experience to conclude that "where the cost of replacing the valve stem seals approaches the cost of replacing the engine, . . . a more prudent approach is to replace the engine." (ECF No. 109 at 25.) He reached his estimate by calling BMW dealers across the United States and creating a price range to account for geographic variations. Thus, he relied on relevant facts and formed an opinion.

Intelligent minds can disagree. This appears to be shocking news to BMW but pablum to the rest of us. BMW sees this case in one light; Manzari sees it in another. That a defendant disagrees with a plaintiff's expert's conclusions is not surprising, nor is it a basis for excluding that plaintiff's expert. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. BMW will have all of those means at its disposal at trial. Nothing else is required.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that BMW's motion to strike Plaintiffs' expert's supplemented expert report (ECF No. 88) is **GRANTED.**

**IT IS FURTHER ORDERED** that BMW's motion to strike Plaintiffs' expert's opinions and testimony (ECF No. 92) is **DENIED.**

Dated at Milwaukee, Wisconsin on February 11, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge